UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

Case No: _____

HAYMANOT MAKONNEN,

    Plaintiff,

v.

NOVA SOUTHEASTERN UNIVERSITY, INC.

    Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, HAYMANOT MAKONNEN, by and through her undersigned counsel, sues the Defendant, NOVA SOUTHEASTERN UNIVERSITY, INC., and alleges as follows:

**JURISDICTION AND VENUE**

1. This is an action for damages and to remedy violations of the rights of MS. MAKONNEN under the Americans with Disabilities Act of 1990, as amended, including the ADA Amendment Act of 2008 ("ADA") and the Florida Civil Rights Act of 1992, as amended ("Chapter 760"), and to redress injuries done to her by the Defendant, NOVA SOUTHEASTERN UNIVERSITY, INC. ("Defendant").

2. The unlawful acts which gave rise to this Complaint occurred within Broward County, Florida during the Plaintiff's employment with Defendant, making venue proper in this District pursuant to 28 U.S.C. § 1391.

**PARTIES**

3. At all times material hereto, Plaintiff has been a citizen and resident of Broward County, Florida and is otherwise *sui juris*.

4. At the relevant time, Plaintiff was a disabled woman, and, as such, Plaintiff is a member of a protected class under the ADA and Chapter 760 because the terms, conditions, and privileges of her employment were altered because of her disability.

5. Defendant is not a government agency. At all times material hereto, Defendant was Plaintiff's employer as defined by law.

6. Defendant has, at all times material hereto, employed 15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year.

7. Plaintiff has exhausted her administrative remedies by filing a timely charge of discrimination against the Defendant with the Equal Employment Opportunity Commission, which was dually filed with the Florida Commission on Human Relations.

8. Plaintiff's charge was filed within 300 days after the first instance of discrimination occurred.

9. Plaintiff was issued a Notice of Right to Sue on August 31, 2020. This suit is filed in accordance with that Notice and within the applicable ninety (90) day limitation (a copy of the Notice is attached hereto as Exhibit "A").

10. The Florida Commission on Human Relations did not issue a finding on Plaintiff's charge within 180 days of the filing of said charge.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

11. Defendant hired Plaintiff on October 5, 1998 as an Admissions Secretary for its Health Profession Division. The Plaintiff was later promoted to an Accounting Assistant. When the Plaintiff graduated with her bachelor's degree in accounting at the end of 2005, she became the Assistant Director of Finance and Budget for the Defendant. Around the beginning of 2006,

the Plaintiff began working for Farquhar College of Arts and Sciences ("FCAS") until her unlawful termination on April 13, 2020.

12. As the Assistant Director of Finance and Administration, Plaintiff's primary duties and responsibilities included helping the Assistant Dean, assisting in Human Resources, and taking care of all administrative issues for FCAS.

13. Plaintiff was qualified for her position as Assistant Director of Finance and Administration based on her experience and training.

14. Around July 2016, the Plaintiff returned to work under Eddie Dominguez, her previous supervisor. The Plaintiff originally worked for him from 2006 to 2015 without incident.

15. In March 2017, the Plaintiff was diagnosed with Chiari Malformation-I, and had to have surgery that same month. Due to complications, the Plaintiff had to go on short-term disability leave. Based on the Plaintiff's doctor's orders, the Plaintiff returned to work on a part-time basis around November 2017, and returned to work full-time at the end of December 2017.

16. Around March 2018, the Plaintiff noticed Mr. Dominguez starting to treat her differently than he had prior to her diagnosis and surgery. He became dissatisfied with the Plaintiff's general performance, criticized her work without specificity, and said that she was "not good enough." The Plaintiff received a verbal warning on March 20, 2018 regarding her alleged poor work performance.

17. In May 2018, Mr. Dominguez asked the Plaintiff to request a different job with other responsibilities because of her disability. The Plaintiff told Mr. Dominguez that she was getting better every day, her strength and health was improving, and she was able to handle her job.

18. Mr. Dominguez regularly spoke to the Plaintiff in a demeaning and critical tone. In addition, Mr. Dominguez did everything in his power to make tasks difficult for the Plaintiff to prove that she could not perform her job due to her disability. Mr. Dominguez did not communicate effectively with the Plaintiff as to his expectations on work assignments, humiliated her in front of her co-workers, and claimed he could not understand her when she spoke.

19. At the suggestion of the Defendant's Benefits Department, the Plaintiff received training on Excel in order to refresh her skills. The Plaintiff successfully achieved the desired Excel skill level, despite the challenges she faced as a result of her disability.

20. In the beginning of June 2018, the Defendant relocated the Plaintiff's office to be away from Mr. Dominguez and the other employees thus contributing to the Plaintiff's isolation and inability to have effective communication with Mr. Dominguez and her colleagues.

21. In 2018, for the first time in the Plaintiff's career, she received an unsatisfactory performance evaluation. That same year, the Defendant provided a $1,000.00 merit pay increase for every employee except for Plaintiff.

22. Mr. Dominguez continued his campaign of discriminatory treatment by making it difficult for the Plaintiff to approach him and ask questions.

23. On July 12, 2019, Mr. Dominguez gave the Plaintiff another unsatisfactory performance evaluation.

24. On July 30, 2019, the Plaintiff had to go to the emergency room. At the next staff meeting, Mr. Dominguez suggested that the Plaintiff talk to her physician and go on permanent disability and stop working. Since the Plaintiff had been improving, her doctor would not approve her for permanent disability.

25.     On September 10, 2019, Mr. Dominguez approached the Plaintiff and accused her of not expressing her condolences when his mother passed away. This was despite the fact that the Plaintiff did express to him, via email, how sorry she was. He also said that the Plaintiff did not wish him a happy birthday. Following this harassment, the Plaintiff emailed Mr. Dominguez, along with his supervisor, Dr. Dodge, the Vice-President of Human Resources, and Dr. Hunbry, President for the Defendant, and requested that Mr. Dominguez stop harassing her and behave professionally.

26.     After the email, Dr. Dodge and Mr. Dominguez called the Plaintiff for a meeting to address her complaint. During the meeting, Dr. Dodge suggested that it was Plaintiff's fault and that she needed to get professional help.

27.     At another meeting on October 2, 2019, Dr. Dodge and Mr. Dominguez asked the Plaintiff to sign an agreement to work on her performance.

28.     On October 22, 2019, after a staff meeting, Mr. Dominguez reiterated that she was not good enough for the job and that she needed to just accept that she will never get better. He also accused the Plaintiff of not smiling when she spoke to him. Due to the Defendant's discriminatory actions, the Plaintiff's health suffered, and she unable to go to work the next day.

29.     For this absence, the Plaintiff followed the normal procedure and called Mr. Dominguez's secretary, Amanda, to let her know that she wasn't feeling well and to ask her to notify Mr. Dominguez that she was staying home. She did not answer so the Plaintiff left her a voicemail. The Plaintiff then received an email from Mr. Dominguez telling her not to contact his secretary but to call him directly when she is sick. The following day the Plaintiff still wasn't feeling well and she called Mr. Dominguez directly to let him know that she still didn't feel well enough to return to work and that she was going to see her doctor. Mr. Dominguez responded with

a demand that she bring a doctor's note when she returned to work. The Defendant's policy is that an employee is not required to provide a doctor's note until that employee takes *more than* two days off due to illness. A coworker who was sick and took time off exactly as the Plaintiff did at the exact same time that she did was not required to bring a doctor's note upon returning to work.

30. On December 4, 2019, the Plaintiff met with Ms. Diane Emry and Ms. Yatzi, from Human Resources. They wanted the Plaintiff to speak to her doctor about going on short-term disability leave. The Plaintiff told them that she did not need to go on leave, but that, instead the problem is her supervisor and his discriminatory treatment. Ms. Emry and Ms. Yatzi were not interested in hearing from the Plaintiff, nor did they say that they would conduct an investigation. They told the Plaintiff to let them know her decision by the end of the next week and that they would help her to get on short term-disability.

31. The Plaintiff submitted her charge of discrimination on December 23, 2019, The Defendant retaliated against the Plaintiff by terminating her employment on April 13, 2020.

32. Plaintiff has engaged the undersigned attorney to prosecute her claims and is entitled to recover her attorney's fees from Defendant pursuant to statute.

### COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 ("ADA")
**(Discrimination on the Basis of Disability)**

33. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 32, inclusive, as though same were fully re-written here.

34. The ADA forbids discrimination based on disability; prohibiting discrimination in employment, public services, public accommodations, and telecommunications.

35. Plaintiff has a disability as that term is defined under the ADA, and, therefore, is a member of the protected class.

36. At all relevant and material times, Defendant failed to comply with the ADA, which states in relevant part: (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

37. At all times relevant hereto, Defendant regarded Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

38. At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendant.

39. Plaintiff was qualified for the position based on her experience and training.

40. Defendant is a large privately-owned business, and therefore a sophisticated employer who has actual knowledge of the requirements of the ADA, as amended.

41. The failure of Defendant to adhere to the mandates of the ADA was willful and its violations of the provisions of the ADA were willful.

42. The Defendant's failure to communicate with the Plaintiff, denying her request for a reasonable accommodation, and failing to engage in the interactive process, demonstrates the Defendant's lack of adherence to its policy against discrimination and failure to comply with the law on disabilities and reasonable accommodations.

43. Because the Plaintiff had a disability, Defendant, through its employees, constantly criticized, belittled, singled out, isolated, and humiliated the Plaintiff.

44. Any allegedly nondiscriminatory reason for the Defendant's treatment of the Plaintiff is a mere pretext for the actual reasons for the discriminatory treatment towards the Plaintiff; inter alia Plaintiff's disability.

45. Upon information and belief, the Defendant does not criticize, belittle, single out, isolate, and humiliate non-disabled employees.

46. As a result of Defendant's violation, Plaintiff has suffered damages.

47. As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, loss of fringe benefits, loss of retirement benefits, compensatory damages under the ADA for emotional distress, liquidated damages, prejudgment and post-judgment interest on her damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

## **COUNT II: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992**
**(Discrimination on the Basis of Disability)**

48. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 32, inclusive, as though same were fully re-written here, and says:

49. The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

50. Plaintiff has a disability as that term is defined in the FCRA, and therefore, is a member of a protected class.

51. At all relevant and material times, Defendant failed to comply with the FCRA.

52. At all times relevant hereto, Defendant regarded Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

53. At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendant.

54. The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

55. Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff on account of her disability in violation of the FCRA.

56. The Defendant's failure to communicate with the Plaintiff, denying her request for a reasonable accommodation, and failing to engage in the interactive process, demonstrates the Defendant's lack of adherence to its policy against discrimination and failure to comply with the law on disabilities and reasonable accommodations.

57. Because the Plaintiff had a disability, Defendant, through its employees, constantly criticized, belittled, singled out, isolated, and humiliated the Plaintiff.

58.  Any allegedly nondiscriminatory reason for the Defendant's treatment of the Plaintiff is a mere pretext for the actual reasons for the discriminatory treatment towards the Plaintiff; inter alia Plaintiff's disability.

59.  Upon information and belief, the Defendant does not criticize, belittle, single out, isolate, and humiliate non-disabled employees.

60.  Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to her disability. The discrimination on the basis of disability constitutes unlawful discrimination.

61.  As a result of Defendant's violation of the FCRA, Plaintiff has suffered damages.

62.  As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, compensatory damages under the FCRA for emotional distress, liquidated damages, punitive damages, prejudgment and post-judgment interest on her damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

### COUNT III: VIOLATION OF ADA
### (Retaliation)

63.  Plaintiff incorporates herein the allegations contained in paragraphs 1 through 32, inclusive, as though same were fully re-written here.

64.  Plaintiff suffered from a disability as that term is defined under the ADA.

65. At all times relevant hereto, Defendant regarded Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

66. Defendant is an employer as that term is defined under the ADA.

67. When the Plaintiff engaged in the protected activity of reporting the discrimination, the Defendant retaliated against the Plaintiff by continuing and intensifying the discrimination and ultimately terminating her.

68. As a result of Defendant's violation, Plaintiff has suffered damages.

69. As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests that this Court enter judgment in her favor against the Defendant by awarding general and compensatory damages and reinstatement, front pay and back pay, prejudgment interest, attorneys' fees and costs, and such other and further relief as this Court deems just and appropriate.

## COUNT IV: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
**(Retaliation)**

70. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 32 inclusive, as though same were fully re-written here.

71. Plaintiff had the right to voice her grievances that she was being discriminated against.

72. When the Plaintiff engaged in the protected activity of reporting the discrimination, the Defendant retaliated against the Plaintiff by continuing and intensifying the discrimination and ultimately terminating her.

73. As a result of Defendant's actions, Plaintiff has suffered damages

74. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of the FCRA, Chapter 760.

WHEREFORE, Plaintiff hereby requests that this Court: (a) declare that Defendant's termination of Plaintiff was in violation of the FCRA; (b) grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's termination of Plaintiff in an amount to be determined at trial and in accordance with the FCRA; (c) award Plaintiff prejudgment and post-judgment interest; (d) award Plaintiff compensatory damages and reinstatement as permitted by law; (e) award Plaintiff the costs of this action, together with her reasonable attorneys' fees incurred herein; and (f) grant Plaintiff such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 25th day of November, 2020

By:  /s/ *Michelle Cohen Levy*
Michelle Cohen Levy, FBN 0068514
The Law Office of Michelle Cohen Levy, P.A.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
P: (954) 651-9196
Michelle@CohenLevyLegal.com

Counsel for Plaintiff